IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOVEREIGN BANK, | : |
|     Plaintiff, | : |
| v. | :    CIVIL ACTION |
| | : |
| GALLCO ENTERPRISES, INC., ET AL., | :    NO. 10-4648 |
|     Defendants. | : |

**MEMORANDUM & ORDER**

Tucker, J.                                                                                                                                       February____, 2011

      Presently before this Court is Plaintiff's Motion for Contempt of the Temporary Restraining Order against Defendants (Doc. 12). For the reasons set forth below, the Court will grant Plaintiff's Motion in part.

<b>BACKGROUND</b>

**A. Plaintiff's Complaint**

      The pertinent facts giving rise to Plaintiffs' Complaint are as follows. Plaintiff, a New Jersey bank, initiated this action against Defendants Gallco Enterprises, Inc., a New Jersey corporation, and Arthur Gallagher, president of Gallco and New Jersey resident, for breach of contract among other claims. On June 29, 2001, the parties entered into a Loan and Security Agreement ("2001 Agreement"), whereby Plaintiff agreed to provide Defendants with financing to purchase motor vehicles for lease to third parties. Pursuant to the Agreement, all of Defendants' leases to third parties were immediately assigned to Plaintiff and the third parties were directed to make all payments to Plaintiff. As of July 31, 2010, Plaintiff's collateral consisted of 151 leases and other related assets and property. Pursuant to several other

provisions of the agreement, Defendant agreed, inter alia, not to modify any lease without Plaintiff's permission and to provide information regarding the collateral upon Plaintiff's request.

Plaintiff claims that Defendants have failed to make payments since May 2010 and have otherwise defaulted on the 2001 Agreement by selling and transferring the collateral. The value of the collateral at issue is approximately $2.3 million.[1] Plaintiff filed a Complaint (Doc. 1) against Defendants on September 13, 2010. Plaintiff's Complaint contains the following four counts: breach of contract, replevin, conversion, and injunctive and declaratory relief.

## B. The Parties' Consent Temporary Restraining Order

Plaintiff avers that even after filing the Complaint, Defendants continued to dissipate its assets by selling and re-leasing vehicles, hiding vehicles, and receiving directly and refusing to turn over lease proceeds. In response, on September 22, 2010, Plaintiff filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4). The parties negotiated an agreement concerning Plaintiff's motion and on September 29, 2010, the Court approved the parties' TRO and Preliminary Injunction by Consent ("Consent TRO") (Doc. 6).

In the Consent TRO, Defendants agreed to, inter alia, (1) refrain from using any of the proceeds derived from the lease or sale of any vehicles or equipment used as collateral pursuant to the parties' 2001 Agreement; (2) place the proceeds from any transactions in Plaintiff's escrow account; (3) provide records concerning the identity, location, lease details, and proceeds received for all collateral; and (4) immediately return to Plaintiff all collateral that has yet to be sold or leased to third parties. In the Consent TRO, Plaintiffs agreed to, inter alia, (1) provide

---

[1] Defendants received a $3 million line of credit from Plaintiff in connection with the Loan and Security Agreement. According to Plaintiff, approximately $2.3 million is outstanding as of the January 3, 2011 hearing on Plaintiff's Contempt Motion hearing.

Defendants with an explanation of the outstanding amount due; (2) provide Defendants with Dealer Activity Reports; (3) apply amounts deposited into its escrow account to the outstanding balance; and (4) send Defendants the titles of the vehicles upon termination of the leases or once the payoff amounts have been satisfied.

**C. Plaintiff's Motion for Contempt of the Consent TRO**

On December 15, 2010, Plaintiff filed a Motion for Contempt of the Consent TRO against Defendants (Doc. 12). In the Motion, Plaintiff alleges that Defendants have violated the Consent TRO by, inter alia, (1) using proceeds of the lease or sale of collateral; (2) failing to deposit the proceeds from such transactions into Plaintiff's escrow account; (3) failing to keep and provide Plaintiff with detailed records of all collateral in Defendants' possession and control; and (4) failing to return equipment that has not yet been leased or sold pending the final resolution of this matter. Defendants did not file a response to Plaintiff's Motion.

**D. January 3, 2001 Hearing on Plaintiff's Contempt Motion**

On January 3, 2011, the Court held a hearing on Plaintiff's Motion where both parties presented oral argument. At the hearing, Plaintiff presented testimony through its witness, Anne Marie Brusseler, Plaintiff's Risk Manager responsible for liquidating all collateral in connection with the 2001 Agreement. Brusseler testified that Defendants failed to make any deposits into the escrow account in October 2010 and November 2010 when deposits should have been made. She stated that Defendants did not make the first deposit until December 16, 2010 and both of the checks contained restrictions in violation of the Consent TRO. Brusseler further testified that an investigation revealed that Defendant Gallagher transferred funds from the escrow account into his own account. According to Brusseler, an employee in Plaintiff's Loss Prevention Group

advised Gallagher that he must immediately return the funds or be subject to prosecution. Defendant Gallagher ultimately returned the funds to the escrow account one week before the hearing. Brusseler further testified that she did not know whether Plaintiff complied with its responsibility under the Consent TRO to provide monthly Dealer Activity Reports to Defendants as those reports are generated by Plaintiff's Operations Group. When Defendant Gallagher was asked whether he submitted to reports to Plaintiff indicating the location of the collateral as agreed in the Consent TRO, he responded "No, I did not." He also admitted to transferring funds from the escrow account into his personal account.

### E. Defendants' January 5, 2011 Report to Plaintiff

On January 5, 2011, Defendant sent to Plaintiffs a document entitled "10-22-10 Off Lease Report" with hand-written notes providing the status of each of the twenty-one vehicles listed therein. He also sent an email summarizing the status of the vehicles; he did not, however, provide the location for any of the vehicles. For Lease Number 001-1452833-740, Defendant Gallagher noted that he re-leased the vehicle, however he did not provide its location or the identity of the new lessee. He also wrote in the email that "1 unit was here and Campbell inspected it. That unit is still here." On the accompanying Report, he wrote that the collateral subject to Lease Number 001-1452813-060 was "At Gallco."

In the email, Defendant Gallagher also claimed that he made payments directly to Plaintiff rather than submit payment to the escrow account, but that he did so with Plaintiff's permission. He wrote that "there was no meeting of the minds regarding the purpose of the escrow account and neither Sovereign or Gallco complied with the letter of the TRO with regard

to the escrow account." [2]

Plaintiff's Motion for Contempt is ripe for review. The Court now addresses this pending motion.

## **LEGAL STANDARD**

"Courts use civil contempt both to compensate losses or damages sustained by reason of noncompliance with a court order and to coerce future compliance." Roe v. Operation Rescue, 730 F. Supp. 656, 657 (E.D. Pa. 1989). "Thus, the broad category of civil contempt consists of compensatory or remedial actions which seek to compensate the complainant for damages caused by past acts of disobedience, and coercive actions which are designed to aid the complainant by bringing the defiant party into compliance with the court's order." Id.

In order for a court to find civil contempt, the moving party must prove that: "(1) a valid court order existed; (2) the defendant had knowledge of the Order, and (3) the defendant disobeyed the Order." Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1995). See also Roe, 919 F.2d at 871. Each of these elements "must be supported by clear and convincing evidence." Harris, 47 F.3d at 1321. See also Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994). Willfulness is not a necessary element of civil contempt," and, accordingly, "evidence ... regarding ... good faith does not bar the conclusion ... that [the defendant] acted in contempt." Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148-49 (3d Cir. 1994). Where, however, there is ground to doubt the wrongfulness of the conduct, the defendant should not be adjudged in contempt. Robin Woods Inc., 28 F.3d at 399.

---

[2] Defendant Gallagher also made other assertions in the letter and requested that Plaintiff forward him Dealer Activity Reports for October, November, and December 2010.

# DISCUSSION

## I. Civil Contempt

As an initial matter, it is indisputable that a valid court order, the Consent TRO, existed. Moreover, Defendants do not contend lack of knowledge of the TRO's existence. Thus, the sole question before the Court is whether Plaintiff has presented clear and convincing evidence that Defendants disobeyed the Consent TRO. For the reasons discussed below, the Court finds that Plaintiff has met this burden and that Defendants should be held in civil contempt.

### A. Defendants' Failure to Deposit Proceeds into Plaintiff's Escrow Account

The Consent TRO requires Defendants to deposit the proceeds from any and all lease and re-lease transactions in connection with the collateral subject to the 2001 Agreement into Plaintiff's escrow account. Brusseler testified that Defendant Gallagher made no deposits into the escrow account in October and November of 2010 and made the first deposit into the escrow account on December 16, 2010. By Defendant Gallagher's own admission, Gallco sent some payments directly to Plaintiff rather than depositing them into the escrow account, however he claims that the did so with Plaintiff's permission. Based on these facts, the Court finds that there was some confusion over whether it was acceptable for Defendants to make payments directly to Plaintiff in lieu of depositing them into the escrow account. Consequently, the Court does not find that there is clear and convincing evidence that Defendants are in contempt of this provision of the Consent TRO.

### B. Defendants' Use of Proceeds Derived from the Lease of Collateral

The Consent TRO expressly prohibits Defendants from using any and all proceeds derived from the lease of any and all of the collateral subject to the 2001 Agreement. Brusseler

testified that upon discovering that the escrow account balance was short, Plaintiff conducted an investigation and found that Defendant Gallagher had used the escrow account information given to him to enable him to make the deposits to transfer escrow funds into his personal account. Defendant Gallagher was advised by Plaintiff's Loss Prevention Department that he would face criminal prosecution if he did not immediately return the transferred funds. He returned the funds a week before the hearing.

The Court finds that at the time the funds were deposited into the escrow account, they were Plaintiff's property. As such, Defendant's transfer alone of the funds into his personal account without Plaintiff's permission clearly constitutes use and is a blatant violation of the Consent TRO.

### C. Defendants' Failure to Maintain and Provide Detailed Records of all Collateral

The Consent TRO requires Defendant to maintain and provide Plaintiff with detailed records of all collateral in Defendants' possession and control or of which Defendants have disposed. The details specifically listed in the Consent TRO include: "the identity of each Leased Equipment; location of each Leased Equipment; the original lessee, the new lessee or purchaser of each Leased Equipment, and a record of all proceeds received by [them]."

Again, clear and convincing evidence of Defendants' failure to comply with this provision is centered on Defendant's own admission at the hearing that he did not provide these records. During cross-examination, when asked if he submitted reports to Plaintiff regarding the location of collateral, Defendant Gallagher responded: "No, I did not."

At the conclusion of the hearing, the Court reiterated that it was Gallagher's responsibility to submit detailed records of all collateral. The Court's examination of the

document and e-mail sent by Defendant Gallagher to Plaintiff on January 5, 2011, two days after the hearing, reveals Defendants' continued failure to comply with the Court's mandate. While Defendant provides the "status" of each of the twenty-one vehicles listed on the "10-22-10 Off Lease Report" in the email, he does not indicate their location nor does he provide any information concerning the proceeds, if any, received from any of the lessees. For Lease Number 001-1452833-740, Defendant Gallagher admits that he re-leased the vehicle, without providing so much as the identity of the new lessee. Based on these facts, the Court finds that there is clear and convincing evidence that Defendants have violated the records-keeping provision of the Consent TRO.

### D. Defendants' Failure to Return all Collateral in their Possession and Control

The Consent TRO requires Defendant to immediately return all leased equipment in Defendants' possession or control that have not yet been leased, sold or re-leased. In Defendant Gallagher's January 5, 2011 email to Plaintiff he stated that "1 unit was here and Campbell inspected it. That unit is still here." On the accompanying "10-22-10 Off Lease Report," Defendant Gallagher wrote that the collateral subject to Lease Number 001-1452813-060 was "At Gallco." This admission, without further explanation, is clear and convincing evidence that Defendants have failed to comply with this provision of the Consent TRO requiring Defendants to return the vehicle to Plaintiff.

In sum, the Court is satisfied that Plaintiff has presented clear and convincing evidence that Defendants have disobeyed several provisions of the Consent TRO. Because all three elements have been met, the Court finds Defendants in civil contempt.

## II. Sanctions

Having found Defendants in civil contempt of the Consent TRO, the Court must now address how Defendants shall be sanctioned for their conduct. The purpose of the civil contempt sanction is remedial and for the benefit of the complainant. Int'l Union, UMWA v. Bagwell, 512 U.S. 821, 827 (1994). Remedial civil contempt sanctions either coerce the party in contempt into complying with a court order, compensate the moving party for damages resulting from the contemnor's noncompliance, or accomplish both aims. Id. at 827-28.[3]

A court has the "inherent power to enforce compliance with [its] lawful orders through civil contempt." Cooper v. Aaron, 358 U.S. 1 (1958). To that end, the law affords courts great discretion in fashioning an appropriate sanction for contempt. Robin Woods Inc., 28 F.3d at 399. This discretion, however, is not without limits. To effectuate the compensatory purpose of the civil contempt order, sanctions levied must not exceed the actual loss suffered by the party because of the violations of the court order. That is, the sanctions awarded must bear reasonable relation to any losses sustained by the complainant due to disobedience, such as lost business, legal fees incurred in bringing the contempt motions, and any expenses incurred while investigating, uncovering, and proving the contempt. See Robin Woods, Inc., 28 F.3d at 400-01. To effectuate the coercive purpose of the civil contempt order, the order must be drafted in such a way as to allow the "contemnor to purge the contempt by committing an affirmative act." See Harris v. City of Philadelphia, 47 F.3d 1311, 1328 (3d Cir. 1995). In other words, the contemnor must be able to eliminate the coercive sanctions through his or her future compliance with the court's order. See id.

---

[3] Cf. Int'l Union, UMWA, 512 U.S. at 826- 33 (discussing the difference between civil contempt sanctions and criminal contempt sanctions, which are punitive in nature and require greater procedural protection).

Here, in addition to ordering Defendants to comply with the terms of the Consent TRO, Plaintiff seeks both an award of attorneys' fees and coercive sanctions. The Court believes Plaintiff is entitled to be compensated for the costs of bringing Defendants' violation of the Consent TRO to the Court's attention. As such, the Court shall award Plaintiff reasonable attorneys' fees. Because, however, Plaintiff has not provided the Court with evidentiary support regarding this monetary loss, the Court shall defer assessing the amount of this sanction until after Plaintiff submits an affidavit providing support for the amount of attorneys' fees. The Court also finds that coercive sanctions are appropriate in this matter because of Defendants' admitted and continuing violation of several of the Consent TRO provisions. As such, the Court shall require Defendants to pay sanctions in the amount of $1000.00 per day for each day that Defendant fails to comply with any provision of the accompanying Order or any of the provisions of the Consent TRO.[4]

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion for Contempt is granted in part. An appropriate Order follows.

---

[4] This sanction shall be levied based on Defendants' conduct going forward.